UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ASBURY AUTOMOTIVE GROUP, INC.                    PLAINTIFFS
and ASBURY MS CHEVROLET LLC
d/b/a GRAY DANIELS CHEVROLET

V.                          CIVIL ACTION NO.  3:19-CV-41-KHJ-LGI

RONALD EDWARD GOODING                            DEFENDANT

ORDER

This matter is before the Court on the Motions for Summary Judgment [105]

[122] filed by Defendant Ronald Edward Gooding and the Partial Motion for

Summary Judgment [120] filed by Plaintiffs Asbury Automotive Group, Inc.

("Asbury Automotive") and Asbury MS Chevrolet LLC d/b/a Gray Daniels Chevrolet

("Gray Daniels") (collectively "Asbury"). For the reasons below, the Court grants in

part and denies in part Gooding's motions and denies Asbury's motion.

I.      Facts and Procedural History

During the relevant time, Asbury Automotive owned the Gray Daniels

dealerships in Mississippi. Gooding started working for Gray Daniels' Toyota

dealership as a sales representative in the spring of 2010, and Gray Daniels

eventually promoted him to "Internet manager." Gooding Depo. [121-2] at 51:7-

52:18. Gray Daniels fired him in fall of 2012. *Id.* at 53:22-54:25. A few months later,

Gooding obtained an Internet sales position at Gray Daniels' Ford dealership. *Id.* at

59:8-13. He worked at the Ford dealership for three or four months before he was

fired for stealing. *Id.* at 59:24-60:25. In November 2017, Gooding emailed Asbury demanding to be paid "everything [he's] owed and [he'll] go away" or to be paid "half of what [Asbury] agreed on audio [he's] owed" while also "tak[ing] action for the revenge and retaliation [he] suffered at the hands of Brandon Parker and Jon Craft." Second Clara Aff. [121-1] at 6.

That same month, Asbury's attorney sent Gooding a cease-and-desist letter about various Facebook posts that allegedly defamed Asbury Automotive and Gray Daniels. *Id.* at 23-25. Gooding, however, did not stop accusing Asbury of bad acts on Facebook—such as discrimination, embezzlement, sexual assault, forgery, and fraud, *see, e.g.*, [121-2] at Exs. 2, 12-13, 21, 24—and continued posting "even after Plaintiffs initiated legal action against him." *Id.* ¶ 10; *see also* [121-2] at Exs. 1-24, 28. Some posts included customer information, which Gooding admits he took when he left Gray Daniels. *Id.* at 315:25-316:24, Exs. 18, 20.

Asbury sued Gooding in January 2019, bringing claims of defamation and defamation per se. Compl. [1]. Asbury amended their Complaint in September 2019, adding claims of breach of contract and misappropriation of trade secrets under the Mississippi Uniform Trade Secrets Act ("MUTSA") and the Federal Defend Trade Secrets Act ("DTSA"). Am. Compl. [20], ¶¶ 25-42. Both Parties now move for summary judgment.

II.   Standard

When considering a motion under Federal Rule of Civil Procedure 56, the Court must "grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the applicable substantive law, 'its resolution could affect the outcome of the action.'" *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). "An issue is 'genuine' if 'the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In analyzing a motion for summary judgment, "the judge's function is not [her]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Klocke v. Watson*, 936 F.3d 240, 246 (5th Cir. 2019) (quoting *Anderson*, 477 U.S. at 249).

"If the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record." *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)). Once the movant meets this requirement, "the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Id.* (quoting *Miss. River Basin All. v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000)). The non-movant must present more than "speculation, improbable inferences, or unsubstantiated assertions." *Jones*, 936 F.3d at 321 (quoting *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015)). "A failure on the part of the nonmoving party to offer proof concerning an essential

element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (citing *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991)).

III.    Subject Matter Jurisdiction

Gooding questions the Court's subject matter jurisdiction in his Motions for Summary Judgment [105] [122], arguing Asbury's potential recovery is less than the jurisdictional amount required for diversity jurisdiction. The Court requested more briefing to decide its authority to adjudicate this action. Order [138].

Asbury brings this claim under the Court's diversity jurisdiction under 28 U.S.C. § 1332. Am. Compl. [20], ¶ 4. Section 1332 requires "the matter in controversy [to] exceed[] the sum or value of $75,000." 28 U.S.C. § 1332(a). "The amount stated in the complaint is itself dispositive of jurisdiction, unless it appears or is in some way shown that the amount stated is not claimed in good faith." *Dassinger v. S. Cent. Bell Tel. Co.*, 505 F.2d 672, 673 (5th Cir. 1974). The Court finds good faith lacking "when it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (citations omitted).

Asbury's Amended Complaint requests monetary damages "in an amount in excess of $250,000." [20], ¶ 52. Asbury seeks only presumed damages and punitive damages not actual damages. Asbury Resp. [143] at 4. As the Court noted in its earlier Order [138], Mississippi law limits punitive damages to "[t]wo percent (2%) of the defendant's net worth of Fifty Million Dollars ($50,000,000.00) or less." Miss.

Code Ann. § 11-1-65(a)(vi). Gooding represents his net worth is "less than zero," which would limit punitive damages to zero. Gooding Aff. [133-1], ¶ 2. The question before the Court, then, is whether Asbury cannot recover more than $75,000 in presumed damages "to a legal certainty."

For a claim of defamation per se, as alleged here, [20], ¶¶ 20-24, a plaintiff need not show actual damage because "the law presumes that one who has been defamed in certain ways has necessarily suffered damage arising from his wounded feelings and diminished reputation." *McFadden v. U.S. Fid. & Guar. Co.*, 766 So. 2d 20, 23 (Miss. Ct. App. 2000) (citations omitted). Under this theory, "the jury, by its own understanding, is competent to calculate an appropriate compensation for the injury to the plaintiff's feelings and reputation that would naturally flow from the publication of such derogatory remarks." *Id.* at 24 (citations omitted). Though presumed damages under Mississippi law may merely be a "basis for a punitive damages award . . . as an exception to the general rule that an actual damages award is a prerequisite to the recovery of exemplary damages," Mississippi Law of Damages, § 41:14 Intentional torts—Libel and slander (3d ed. 2020), no Mississippi court or statute explicitly states this principle. As a result, the Court cannot declare that Asbury cannot recover more than the jurisdictional amount of $75,000 "to a legal certainty," *see Dassinger*, 505 F.2d at 673 (citations omitted). The Court therefore has subject matter jurisdiction.

IV.     Gooding's Motions for Summary Judgment [105] [122]

Gooding raises essentially the same arguments in both his motions for summary judgment, asserting Asbury does not establish any element of its defamation claims, breach of contract claims, or appropriation of trade secrets claims. *Compare* [106] at 2-17 *with* [123] at 11-28. Gooding also argues Asbury's claims are moot. The Court will address each of these arguments in turn.

A.      Asbury's Claims Are Not Moot[1]

Gooding argues Asbury's claims against him are moot because Asbury Automotive no longer operates dealerships in Mississippi. [106] at 3-5; [123] at 11-13. A controversy is moot "when the parties lack a legal cognizable interest in the outcome." *In re Scruggs*, 392 F.3d 124, 128 (5th Cir. 2004) (quoting *Chevron, U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993)) (per curiam). Mootness deprives the Court of jurisdiction to hear a matter. *Id.* (citing *Goldin v. Barthalaw*, 166 F.3d 710, 717 (5th Cir. 1999)). Gooding relies exclusively on *In re Scruggs* and the Eleventh Circuit's opinion in *Lucero v. Trosch*, 121 F.3d 591 (11th Cir. 1997), to argue Asbury no longer has a legal interest in this suit. *See* [106] at 3-5; [123] at 11-13.

Neither *In re Scruggs* nor *Lucero* supports Gooding's arguments. *In re Scruggs* involved a bankruptcy appeal where the Court found a final judgment in a

---

[1] Gooding asserts mootness and standing arguments interchangeably. "Standing is determined as of the time that suit is filed." *Energy Mgmt. Corp. v. City of Shreveport*, 397 F.3d 297, 301 n.3 (5th Cir. 2005) (citing *Pederson v. La. State Univ.*, 213 F.3d 858, 870 (5th Cir. 2000)). Gooding admits that Asbury sold the Gray Daniels dealerships in 2020, nearly a year after Asbury sued. [123] at 3. Any standing argument is therefore unpersuasive.

separate state action mooted the federal bankruptcy appeal. 392 F.3d at 126-29. Nothing in *In re Scruggs* holds that a controversy becomes moot when a corporation no longer does business in the forum state. *See generally id.*

*Lucero* is no more helpful to Gooding. In *Lucero*, the plaintiff owned and operated an abortion clinic in Birmingham, Alabama, and sought injunctive relief and monetary damages for the defendants' alleged unlawful protests. 121 F.3d at 594-95. After suing, the plaintiff sold the clinic and moved out of Alabama. *Id.* at 595. The Eleventh Circuit determined the plaintiff's claim for injunctive relief was moot because he no longer owned or operated the clinic and no longer lived in Alabama. *Id.* at 596. The Court then held, however, that his claims for monetary relief were not moot. *Id.* Unlike here, the plaintiff in *Lucero* no longer did business or lived in Alabama, which mooted the claims for injunctive relief because he sought an injunction against protesters at his clinic and his Alabama home, where he no longer worked or lived. *Id.* at 594-96.

Unlike the *Lucero* plaintiff, Asbury seeks to enjoin Gooding from posting defamatory statements on the Internet, not from physically protesting in Mississippi at either its business or any of its employees' homes. *See id.* Asbury also alleges that Gooding made defamatory statements about Asbury Automotive and its dealerships generally, not just the Gray Daniels dealerships Asbury operated in Mississippi. *See, e.g.*, Gooding Depo. [121-2] at Exs. 2-4, 6-9, 13, 15-17, 19, 21, 23-24. The Court therefore finds this matter is not moot.

B.    Asbury Presents Triable Claims of Defamation

Gooding also argues Asbury presents no triable issues of fact on their

defamation and defamation per se claims. [106] at 7-8; [123] at 15-16. To survive

summary judgment on their defamation claims, Asbury must present a genuine

issue of fact on these elements: "(1) a false and defamatory statement concerning

plaintiff; (2) unprivileged publication to third party; (3) fault amounting at least to

negligence on part of publisher; (4) and either actionability of statement irrespective

of special harm or existence of special harm caused by publication." *Armistead v.

Minor*, 815 So. 2d 1189, 1193 (Miss. 2002) (citing *Franklin v. Thompson*, 722 So. 2d

688, 692 (Miss. 1998)).[2]

When the defamation is actionable "irrespective of special harm," it is called

defamation per se. *McFadden*, 766 So. 2d at 23-24. Defamation per se "is limited to

four general areas of defamation":

> (a) words imputing criminal activity to the plaintiff, (b) the imputation
> that the plaintiff has a loathsome disease, (c) any attack on the
> capabilities of a plaintiff in his trade or profession (so long, only, as the
> trade or profession is a legal one), and (d) accusations of unchastity
> made concerning a female plaintiff.

*Id.* at 24. Gooding makes multiple arguments about why Asbury cannot survive

judgment on these claims, which the Court addresses below.

---

[2] Gooding incorrectly cites this case in his first motion for summary as stating that the
elements for defamation include "(1) the hearers reasonably and actually understood the
statements to be about the Plaintiffs; (2) the statements were false; (3) the statements were
defamatory; (4) the statements were not privileged; (5) the statements were published with
actual malice; (6) the statements caused actual damages." [106] at 8. Gooding cites the
correct elements in his second motion, citing Mississippi Law of Torts § 11.1 (2019). [123] at
16.

1.     Gooding Directed his Statements at Asbury

Gooding incorrectly asserts Asbury must "prove that one or more recipients of the statements did in fact understand each particular statement as referring to the Plaintiffs." [106] at 8 (citing *Gertz v. Robert Welch Inc.*, 418 U.S. 323 (1974); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964); Restatement (Second) of Torts § 564 cmt. f (1977); *Franklin*, 722 So. 2d at 692). The correct standard holds a defamatory statement "must have clearly been directed toward the plaintiff." *Franklin*, 722 So. 2d at 692. A recipient's understanding may be used to "infer[] that the defamer was negligent in failing to realize that the communication" would be understood to be about the plaintiff. Restatement (Second) of Torts § 564 cmt. f. But the operative questions for liability purposes, however, is whether the alleged defamer "knew that the communication would be understood by the recipient to refer to the plaintiff or was negligent in failing to recognize that this might happen." *Id.* Because Gooding's statements refer to Asbury Automotive and Gray Daniels by name, *see, e.g.*, Gooding Depo. [121-2] at Exs. 2-9, 12-13, 15-17, 19-24, the Court finds Asbury meets this burden.

Some statements Gooding made refer to Asbury's officers or employees. For example, Gooding accuses an "Asbury Automotive Director" of "hacking" a bank, [121-2] at Ex. 9, and claims a "Director of Finance [of] Asbury Automotive" violated the Consumer Fraud and Abuse Act by committing various computer crimes. *Id.* at Ex. 15. No party addresses this in the briefing, though Gooding raises it briefly as a standing issue in his Reply in support of his second Motion for Summary Judgment. [133] at 3. Nevertheless, Asbury must demonstrate that statements referring to its

officers and employees are "clearly . . . directed toward" Asbury at trial. *Franklin*,
722 So. 2d at 692.

        2.      Asbury Presents Evidence that the Statements are False

Gooding argues Asbury must establish his statements were false "by clear
and convincing evidence." [106] at 10; [123] at 16. Gooding confuses the standard
Asbury must meet. A plaintiff must show actual malice—the defendant's *knowledge*
of the falsity of a statement—"by clear and convincing evidence" only where the
plaintiff is a public figure.[3] *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 247
(2014); *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 510 (1991). Further,
"[w]hether the federal Constitution requires plaintiffs to prove *falsity* by clear and
convincing evidence is an open question." *DiBella v. Hopkins*, 403 F.3d 102, 110 (2d
Cir. 2005) (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 661
n.2 (1989)) (emphasis in original).

Statements that are "substantially true" are not actionable, as Mississippi
courts hold that "[m]inor inaccuracies do not amount to falsity so long as 'the
substance, the gist, the sting, of the libelous charge be justified.'" *Armistead*, 815 So.
2d at 1194 (quoting *Masson*, 501 U.S. at 517) (alteration in original). Gooding
states, without citation to authority, that Asbury must show that his statements are
"statements of fact, and not just overblown rhetoric, insults, satire, opinion, or a
layman's innocent error of law." [106] at 11. The Mississippi Supreme Court,
however, has held a statement, even if phrased as an opinion, can be defamatory

---

[3] As explained below, *see infra* Section IV.B.5, neither Asbury Automotive nor Gray Daniels
is a public figure who must establish actual malice.

where it "could be reasonably understood as declaring or implying a provable assertion of fact." *Franklin*, 722 So. 2d at 693 (*Roussel v. Robbins*, 688 So. 2d 714, 723 (Miss. 1996)).

Gooding has posted many statements that could be understood as declaring or implying factual assertions, such as the following: "[w]orking for Asbury is a national health crisis: work environment so hostile, corrupt, and criminal; and where revenge retaliation, and reprisal is the norm, and has led to the death by suicide of salesman; and destroyed many great others," [121-2] at Ex. 2; Asbury "[t]olerated, promoted, condoned, and encouraged a boiler room atmosphere in a racially charged, gender biased, and verbally, physically and sexually abusive, criminal hostile work environment," *id.* at Ex. 21; Asbury tolerated the "slamming of black salesman onto pavement by white manager," who then "shov[ed] cellphone [sic] up black salesman's rectum causing him to squeal," *id.*; Asbury maintained a "[w]hites only bathroom," *id.*; Asbury had a hit list of people of color to fire, *id.* at Ex. 10; Asbury "[f]ired the only black manager in the ENTIRE building for being black," *id.*; "Asbury forged [Gooding's] signature on an employment application to backdate to be able to blacklist [him], and not to hire [him]," *id.* at Ex. 12; Asbury "embezzled "[h]alf a million dollars . . . from General Motors," *id.* at Ex. 13; Asbury's dealership forging credit applications by "inflating customers income for subprime loan approvals, exceeding banks dealer portal network access to manipulate and electronically submit false information; and putting lives in danger by preventing consumers from receiving important recall information by deleting and/or

overwriting of consumers incoming electronically submitted personal information," *id.* at Ex. 21; and "Asbury Automotive practices in: . . . Wire Fraud & Embezzlement; . . . [and] Forgery. . . ." *Id.* at Ex. 24.

Asbury presents affidavit testimony that these allegations are false. First Clara Aff. [109-12], ¶¶ 4-11; Horton Aff. [109-14], ¶¶ 5-6. Gooding's statements are more than "[m]inor inaccuracies," *Armistead*, 815 So. 2d at 1194 (citation omitted), and Asbury's evidence is that the statements are "categorically" false, with no truth, let alone enough to be "substantially true." [109-12], ¶ 5; *Armistead*, 815 So. 2d at 1194 (citation omitted). The Court therefore finds Asbury presents sufficient evidence to create a factual dispute on whether Gooding's statements are false.

3.      Asbury Presents Evidence that the Statements are Defamatory

Gooding argues Asbury cannot show his statements are defamatory because he supplies no evidence that "anyone that read these statements when they were published actually thought any worse of them as a result." Memo. in Support [106] at 11. He essentially argues the statements were not defamatory because Asbury suffered no reputational harm. *Id.* But Mississippi law does not require Asbury to show that a statement damaged its reputation for that statement to be defamatory. Instead, the Mississippi Supreme Court defines "a defamatory statement as '[a]ny written or printed language which tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community.'" *Journal Publ'g Co. v. McCullough*, 743 So. 2d 352, 360 (Miss. 1999) (quoting *Fulton v. Miss.*

*Publishers Corp.*, 498 So. 2d 1215, 1216 (Miss. 1986)) (alteration in original). To be defamatory, a statement does not have to injure a plaintiff's reputation, but only be of the type which would ordinarily injure reputation. *Id.*

The Court finds Asbury has produced sufficient evidence of defamatory statements. Gooding's statements accusing Asbury of discrimination, embezzlement, sexual assault, forgery, and fraud are of the nature which tend to injure a business's reputation. *See, e.g.*, [121-2] at Exs. 2, 12-13, 21, 24. Asbury therefore meets its burden on summary judgment to show a defamatory statement.

4.     Asbury Presents Evidence that the Statements are Unprivileged

Gooding argues a "fair comment" privilege and a "public policy" privilege protect his statements. [123] at 19-20. First, he contends "someone can become a vortex public figure when they operate in the public sphere," and this creates what Gooding calls the "fair comment" privilege. *Id.* at 19. Second, Gooding mistakenly calls qualified privilege a "public policy" privilege and argues his statements concerned a matter he had an interest and related to people with corresponding interests. *Id.* at 19-20.

Gooding's argument for a "fair comment" privilege confuses privilege with the heightened standard of care required in the context of public figures. Gooding cites *Eason v. Federal Broadcasting Co.*, 697 So. 2d 435 (Miss. 1997), for support that Asbury is "a vortex public figure." [123] at 19. The Mississippi Supreme Court in *Eason* states, "A finding that Eason was a vortex or limited purpose public figure under the facts of the present case would change the standard of care in the present

13

case from one of negligence to one of malice." 697 So. 2d at 438. Even if Asbury *were* a "vortex public figure," this would not create a privilege Gooding could claim.

Gooding next argues qualified privilege applies to his public Facebook posts. [123] at 19-20 (citing *Young v. Jackson*, 572 So. 2d 378, 383 (Miss. 1990)). Because he made similar statements to law enforcement, he says his Facebook statements are privileged. [110] at 12. *Young* holds a communication is subject to qualified privilege when it is "made in good faith . . . on a subject-matter in which a person has an interest, or in reference to which he has a duty" and is "made to a person or persons having a corresponding interest or duty." 572 So. 2d. at 383 (quoting *La. Oil Corp. v. Renno*, 157 So. 705, 708 (1934)). The Mississippi Supreme Court has clarified, though, that "[a] qualified privilege does not protect a defamatory statement where there is excessive publication to persons not within the 'circle' of those people who have a legitimate and direct interest in the subject matter of the communication." *Eckman v. Cooper Tire & Rubber Co.*, 893 So. 2d 1049, 1053 (Miss. 2005) (citing *Garziano v. E.I. Dupont de Nemours & Co.*, 818 F.2d 380, 391-92 (5th Cir. 1987)). Given Gooding published his statements on the Internet to the public— not just to persons within the "circle" of those with "legitimate and direct interest[s]"—he cannot claim qualified privilege applies.

> 5.  Gooding Does Not Establish Asbury Must Show Actual Malice

Gooding argues Asbury is a public figure and therefore must show actual malice. [110] at 12-13; [123] at 20-21. Alternatively, Gooding argues Asbury fails to show he negligently made statements because he based them on "reliable

information." [123] at 21-22. Asbury responds that they are not public figures, and that evidence shows Gooding acted either with actual malice or negligence. [127] at 12-15.

a.    Public Figures

Whether Asbury must show actual malice depends on whether each of the individual corporate defendants—Asbury Automotive and Gray Daniels—are public figures. This is an issue of law the Court must decide. *Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1328 (5th Cir. 1993).  The Court considers three, non-exhaustive factors to determine whether a corporate entity is a public figure: (1) "the notoriety of the corporation to the average individual in the relevant geographical area"; (2) "the nature of the corporation's business"; and (3) "the frequency and intensity of media scrutiny that a corporation normally receives." *Id.* at 1329-30. The rationale behind this test is that public-figure entities "enjoy significantly greater access to channels of effective communication," are less "vulnerable to injury," and have "thrust themselves into the public eye, inviting closer scrutiny than might otherwise be the case." *Id.* at 1329. Most corporations do not fit these criteria. *Id.*

Many factors affect the notoriety of a corporate entity, "such as the size and nationality of the corporation." *Id.* But that an entity is large and successful "does not mean that the average individual (as opposed to institutional investors, portfolio owners, and loan originators) would be familiar with the corporation." *Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.*, 553 F. Supp. 2d 680, 691 (N.D. Tex.

2008). The Court must also consider the entity's business, as "[p]rominent consumer goods makers or merchants, as well as consumer service corporations, are much more likely to attain public figure status." *Snead*, 998 F.2d at 1329. Finally, the Court looks at how often and intense the media scrutiny of the entity is, as "even a small corporation that does not deal with consumers might attain notoriety" if it engages in actions which "become widely publicized." *Id.*

>     i.     Asbury Automotive

Like the plaintiff in *Super Future Equities*, who offered banking and financial services to institutions, Asbury Automotive, though large and successful, is a parent company that owns multiple dealerships that sold vehicles, not a company with notoriety or one familiar to customers. 553 F. Supp. 2d at 691. While Asbury Automotive's website does offer features that allows consumers to browse available vehicles at all their dealerships, *see* [122-2], Gooding puts forward no evidence that the average individual would be generally aware of Asbury Automotive. While he does not argue the nature of Asbury Automotive's business supports a finding that it is a public figure, Gooding claims "Asbury is a constant source of media fodder, triggering an average of three articles a day." [123] at 21-21. But he offers no evidence in support and does not produce a single media article about Asbury Automotive.

For these reasons, based on the record before it, the Court cannot find that Asbury Automotive is a public figure. Asbury Automotive therefore does not have to show actual malice for its defamation claims.

ii.    Gray Daniels

There is a similar lack of evidence on Gray Daniels' status as a public figure. Gray Daniels was a local dealership chain Asbury Automotive owned during the relevant time. Gooding argues that "Gray Daniels is a household name in the metroplex; their radio and tv ads are inescapable, and the chances are good that anyone that has purchased a vehicle in the tri-county area has at least been to a Gray Daniels dealership for a test drive." [123] at 21. Gooding points to no record evidence that shows Gray Daniels' notoriety in the relevant area.

Gooding argues the next *Snead* factor, the nature of its business, supports Gray Daniels being a public figure because it sells vehicles directly to consumers, and therefore its business is "built on interacting with the public." [123] at 21. The Court does not understand how selling goods directly to consumers makes them so "prominent" to be a public figure, at least no more than any other merchant. Nor does Gooding allege, let alone support with evidence, that the media often scrutinizes Gray Daniels, unless his claim that "Asbury" is constantly a source of "media fodder" is meant to apply to Gray Daniels as well. [123] at 21-22. Again, Gooding offers no evidence on this.

Because no evidence supports a genuine dispute of material fact that the *Snead* factors favor a finding that Gray Daniels is a public figure, the Court does not find it to be a public figure and Gray Daniels therefore does not have to show actual malice.

          b.        Asbury Presents Evidence of Fault Amounting to Negligence

For defamation actions against private individuals, Mississippi law requires only "fault amounting at least to negligence on part of publisher." *Armistead*, 815 So. 2d at 1193 (citing *Franklin*, 722 So. 2d at 692). Asbury produces sufficient evidence for a reasonable jury to find Gooding acted at least negligently.

First, Gooding sent a text message to Brandon Parker, a Gray Daniels employee, asking Parker to join him in his campaign against Asbury to get a "payday." [121-2] at Ex. 25. Next, during his deposition, Gooding admitted he based some of his statements on his "assumptions" or very scarce evidence, such as (1) for his statement that Asbury had a hit list of people of color to fire, *id.* at Ex. 10, Gooding admitted he never saw this list, but he saw a text on Parker's phone about firing a "n*****," *id.* at 236:4-13 (alteration added); (2) for his statement that Asbury "[f]ired the only black manager in the ENTIRE building for being black," *id.* at Ex. 10, Gooding admitted this was only his assumption and the assumption of others, *id.*, 239:21-240:5; and (3) for his statement that Asbury "embezzled [h]alf a million dollars . . . from General Motors," *id.* at Ex. 13, Gooding says he based this statement solely on Daniel Jacobs, an internet leads representative, who told him manipulating online leads could be "embezzlement," *id.* at 263:5-14 and admits he "kind of" made up the half-million-dollar number. *Id.* at 259:21-260:15. Taken together, the Court finds a reasonable jury could find Gooding acted negligently in publishing his statements.

6.   Asbury Seeks Presumed and Punitive Damages

As for damages, Gooding first argues that, as public figures, Asbury cannot sue for defamation per se based on the Supreme Court's decision in *Gertz*. But *Gertz* does not apply, because it discusses defamation per se claims brought against public figures. 418 U.S. at 349-50. The Court has already found Gooding has failed to show Asbury Automotive and Gray Daniel are public figures.

Gooding then contends Asbury cannot show actual damages. Asbury does not seek actual damages, though, but seeks presumed and punitive damages for defamation per se instead. [128] at 17. Asbury has produced Gooding's statements accusing them of criminal activity such as embezzlement, forgery, and fraud, which fall into Mississippi's categories for defamation per se. [121-2] at Exs. 12, 13, 21, 24; *McFadden*, 766 So. 2d at 24. That said, the Court grants Gooding's motions related to any defamation claim that does not fit into the four general areas of defamation per se under Mississippi law.

These statements Gooding made remain actionable under a defamation per se theory: Asbury "[t]olerated, promoted, condoned, and encouraged a boiler room atmosphere in a racially charged, gender biased, and verbally, physically and sexually abusive, criminal hostile work environment," [121-2] at Ex. 21; Asbury tolerated the "slamming of black salesman onto pavement by white manager," who then "shov[ed] cellphone [sic] up black salesman's rectum causing him to squeal," *id.*; "Asbury forged [Gooding's] signature on an employment application to backdate to be able to blacklist [him], and not to hire [him]," *id.* at Ex. 12; Asbury "embezzled

19

"[h]alf a million dollars . . . from General Motors," *id.* at Ex. 13; Asbury's dealership forging credit applications by "inflating customers income for subprime loan approvals, exceeding banks dealer portal network access to manipulate and electronically submit false information; and putting lives in danger by preventing consumers from receiving important recall information by deleting and/or overwriting of consumers incoming electronically submitted personal information," *id.* at Ex. 21; and "Asbury Automotive practices in: . . . Wire Fraud & Embezzlement; . . . [and] Forgery. . . ." *Id.* at Ex. 24.

    C.    Asbury Presents Viable Trade Secrets

Gooding makes two arguments about why Asbury's federal and state misappropriation of trade secrets claims fail. First, he argues Asbury lacks standing to pursue these claims because McLarty MJC, LLC now owns Gray Daniels D/B/A and brand Gray Daniels Chevrolet. [123] at 3, 24. Second, Gooding argues Asbury cannot show he misappropriated trade secrets because "sales figures, vehicle invoices, customer information and contracts, [and] financial documents and information" have no "independent economic value." [106] at 14-16; [123] at 24-27.

Gooding argues both mootness and a lack of standing on the claims involving Gray Daniels because Asbury sold the Gray Daniels dealerships. These mootness and standing arguments are the same as those argued for Asbury's defamation claims and fail for the same reasons as discussed above. *See supra* Section IV.A.

Gooding's second argument hinges on whether the information he took constituted a trade secret. Gooding admitted in his deposition that, while employed

as a Gray Daniels sales representative, he took screenshots of documents that had sales data and customer information. Gooding Depo. [121-1] at 315:25-316:24. These types of information are trade secrets under Mississippi and federal law.

Asbury brings claims under the MUTSA and the DTSA. Am. Compl. [20], ¶¶ 25-38. Product pricing and customer-related information constitute trade secrets under the MUTSA. *Unified Brands, Inc. v. Teders*, 868 F. Supp. 2d 572, 583-84 (S.D. Miss. 2012) (gathering cases). "[I]nventory compositions, pricing lists, geographical sales data, and vendor identifications information" are also trade secrets under the MUTSA. *ITR Am., LLC v. TREK, Inc.*, No. 3:16-cv-703-WHB-JCG, 2017 WL 52244715, at *7 (S.D. Miss. Sep. 26, 2017) (gathering cases); *see also Union Nat'l Life Ins. Co. v. Tillman*, 143 F. Supp. 2d 638, 643-44 (N.D. Miss. 2000) (finding defendant misappropriated the trade secrets of his former employer, an insurance company, by selling insurance to its former customers in breach of his covenant not to compete); *Fred's Stores of Miss., Inc. v. M & H Drugs, Inc.*, 725 So. 2d 902, 911 (Miss. 1998) (finding a master customer list to be a trade secret). Because state law informs what is a trade secret under the DTSA, this type of information is also a trade secret under federal law. *See Complete Logistical Servs., LLC v. Rulh*, 350 F. Supp. 3d 512, 518-19 (E.D. La. 2018) (stating "existing law on trade secrets informs the Court's applications of the DTSA" and finding customer lists a trade secret based on Louisiana's state law) (citation omitted).

21

Asbury meets their burden to produce evidence the information Gooding took constituted a trade secret. The Court therefore denies Gooding's motions as to Asbury's misappropriation of trade secret claims.

D.     Asbury Presents a Viable Breach of Contract Claim

Gooding makes three arguments about why Asbury has no viable breach of contract claim. First, Gooding contends that the breach of contract claim is redundant of their misappropriation of trade secrets claims because it is based on the same underlying conduct. [106] at 17; [123] at 27. This argument is unavailing as Gooding points to no authority that prevents different legal claims for the same underlying conduct.

Next, Gooding argues Asbury does not identify a contract. [106] at 17. But Asbury points to the Sales Advisor Pay Plan Preview, particularly the confidentiality clause, that Gooding signed. [109-15].

Finally, Gooding asserts he did not "use" customer information as the confidentiality clause prohibits and even redacted identifying information in his Facebook posts. [123] at 27. Asbury produces evidence showing that Gooding posted individual customer sales information on Facebook. Gooding Depo. [121-2] at Exs. 18, 20. The confidentiality clause prohibits direct or indirect "use [of] any confidential information . . . including records, files, customer information and customer lists," and does not require the identity of customers to be disclosed as part of this "use." [126-4] at 4. Evidence showing Gooding posted customer sales

22

information on Facebook, then, creates a question of fact about whether Gooding used the information as the confidentiality clause prohibited.

Thus, the Court denies Gooding's motions on Asbury's breach of contract claim.

V.    Asbury's Partial Motion for Summary Judgment [120]

Asbury seeks partial summary judgment on their defamation per se claims. Because Asbury bears the burden on this claim at trial, they "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [their] favor." *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)) (emphasis in original). "[T]he 'beyond peradventure' standard is 'heavy.'" *GoForIt Ent., LLC v. DigiMedia.com LP*, 750 F. Supp. 2d 712, 722 (N.D. Tex. 2010) (quoting *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923 (N.D. Tex. 2009)). If Asbury meets this burden, Gooding must "establish an issue of fact that warrants trial." *Id.* (citing *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 420 n.4 (5th Cir. 2016)).

To warrant summary judgment on its defamation per se claim, Asbury must "establish beyond peradventure" all of these elements: "(1) a false and defamatory statement concerning plaintiff; (2) unprivileged publication to third party; (3) fault amounting at least to negligence on part of publisher; (4) and either actionability of statement irrespective of special harm or existence of special harm caused by publication." *Armistead*, 815 So. 2d at 1193 (citing *Franklin*, 722 So. 2d at 692). To

establish defamation per se, Asbury must show the defamation fits within one of

these four areas:

> (a) words imputing criminal activity to the plaintiff, (b) the imputation
> that the plaintiff has a loathsome disease, (c) any attack on the
> capabilities of a plaintiff in his trade or profession (so long, only, as the
> trade or profession is a legal one), and (d) accusations of unchastity
> made concerning a female plaintiff.

*McFadden*, 766 So. 2d at 24.

Asbury points to Gooding's statements attributing to them "a laundry list of

bad acts in their operations," including embezzlement, drug solicitation, racial

discrimination, causing the deaths of employees through a hostile work

environment, ignoring sexual assaults on their employees, hacking a bank's

computer information, and promoting unspecified criminal conduct. [121] at 6-14,

18. The only specific criminal acts are embezzlement, drug solicitation, hacking, and

sexual assault.[4] Further, though Gooding's statements accuse Asbury of ignoring or

condoning this activity, Asbury admits Gooding directed his allegations about drug

solicitation, hacking, and sexual assault at Asbury's employees and not Asbury

itself. [121] at 6-9, 11-12; *see also Franklin*, 722 So. 2d at 692 (stating a defamatory

statement "must have clearly been directed toward the plaintiff"). As a result, the

only defamatory statements before the Court for purposes of this motion are those

---

[4] While racial discrimination in the workplace is illegal and would subject an employer to
civil liability, Asbury does not show beyond peradventure that these actions are *criminal*
activities. Further, though the Court can conceive of criminal charges a person could accuse
Asbury of for supposedly causing death through a hostile work environment, Asbury does
not show the criminality of this allegation as needed for the Court to grant summary
judgment as a matter of law on these statements.

alleging Asbury embezzled money from General Motors. *See* Gooding Depo [121-2] at Ex. 13.

For their defamation claim, Asbury must establish these statements are false. *McFadden*, 766 So. 2d at 24. As discussed above, *see supra* Sections IV.B.2-3, Asbury has produced evidence that Gooding's embezzlement statements are false. Gooding responds by pointing to the deposition of Kelly Miller, who testified that Asbury reported fictitious sales to General Motors to fraudulently obtain bonuses. Miller Depo. [122-11] at 128:17-130:17. The Court does not decide whether this proves Asbury embezzled money from General Motors, but it does find that this evidence is enough to show Asbury has not established falsity "beyond peradventure."

Because Asbury does not prove "beyond peradventure," the first element of their defamation per se claims, the Court need not analyze the other elements of these claims. The Court therefore denies Asbury's Motion for Partial Summary Judgment [120].

VI.     Conclusion

The Court has considered all the arguments set forth by the parties. Those arguments not addressed would not have changed the outcome of the Court's decision. For these reasons, the Court GRANTS IN PART and DENIES IN PART Gooding's Motions for Summary Judgment [105]; [122]. The Court DISMISSES WITH PREJUDICE any defamation claim brought by Asbury that does not fit into the four general areas of defamation per se under Mississippi law.

The Court further DENIES Asbury's Motion for Partial Summary Judgment [120].

SO ORDERED AND ADJUDGED this the 11th day of August, 2021.


s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE